No. 24,136.

M. A. SPRY, *Appellant,* v. THE MISSOURI PACIFIC RAILROAD COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

NEGLIGENCE—*Passenger Alighting from Train—Location of Step-box.* The proceedings considered in an action by a passenger to recover for personal injury received while alighting from defendant's train, and *held,* the defendant was not negligent in respect to the location of the step-box provided for use by disembarking passengers, or in any other respect.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed January 6, 1923. Affirmed.

C. M. Williams, and D. C. Martindell, both of Hutchinson, for the appellant.

W. P. Waggener, James M. Challis, both of Atchison, C. E. Branine, and H. R. Branine, both of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a passenger to recover for personal injury received while alighting from a train. A demurrer to the plaintiff's evidence was sustained, and she appeals.

The train stopped at the platform of the station of Geneseo. The platform was about two feet below the bottom car-step, and a step-box about nine inches high was provided for use of passengers in alighting. The plaintiff was the last person to leave the car in which she had been riding. Her husband had gone before her, carrying their luggage, and she followed a man from the smoking car down the car steps. She placed the ball of her left foot on the edge of the step-box next to the car. The step-box turned over,

and she saved herself from falling under the car by catching the handrail, but she suffered a severely sprained ankle.

The station platform was of brick. There was no evidence that it was not level, or smooth, or that it was defective, or that its condition contributed to the injury. The plaintiff said the step-box was "oblong" in shape. The base was broader than the top, and there was no evidence that it was too small, or was defective in any particular. While the plaintiff was alighting, the train porter stood near, about three feet away, but with his back toward her. There was no evidence that she appeared to need or that she desired assistance in alighting. It was dusk, or nearly dusk, when the train arrived at Geneseo, and the station lights were turned on soon after the plaintiff was injured. She could not see distinctly, but she did see the step-box, and could see where it was located when she went down the car steps.

Step-box cases are collated in the article on carriers in 10 C. J., at page 934. In the case of *Scott v. Vicksburg, S. & P. Ry. Co.,* 150 La. 538, the court said:

"As to the law of the case, we are of the opinion that, where a carrier of passengers furnishes a step-box or foot-stool, to facilitate them in boarding or alighting from its train, it is bound to see that such appliance is safe as to strength, is so constructed as not to be readily overturned, is kept in proper condition, and when set out for use of passengers is placed upon a level and stable surface. . . ." (p. 546.)

All these requirements were complied with in the present case. Cases are cited in which the train did not stop at the platform, and the step-box, placed on stony ground, was tendered to an alighting passenger as a substitute for the platform; in which the box was placed too far under the car, and the passenger, who needed assistance, was not properly helped; in which the box was placed on soft ground; in which the box was placed on ground rough and uneven, so that it was unsteady and insecure. None of these cases is of any assistance here.

It may be said generally that a step-box ought to be placed substantially in front of and neither too far from nor too near to the car steps. These statements are too indefinite to furnish a standard, and the court knows of no mathematical rule for locating a step-box. The practice is for the porter or other train employee to set the box down and, if thought necessary, to move it to what seems to him to be a proper position. Passengers will necessarily have different physical proportions; some will hold to the handrail on the right, while lowering themselves, and some will use the handrail on

the left; the skirts of women's dresses may or may not allow full freedom of movement; and some variations in the position of the step-box is unavoidable. The result is, it is not possible to be dogmatic about just where a step-box should be placed to accommodate a number of alighting passengers.

Negligence must be proved, and when the inference of negligence is to be derived in part from physical conditions, the conditions must be proved. In this instance, the plaintiff's testimony did not locate the step-box with any certainty, beyond the fact that it was on the station platform, and she reached the edge of it next to the car with the ball of her left foot. Whether she stepped directly downward, or stepped outward as well as downward, or stepped somewhat toward the right or toward the left, she did not say. Under these circumstances, the jury would not have been warranted in concluding the railroad company was at fault, merely because the plaintiff did not step securely on the top of the box. The court is confirmed in this opinion by the fact that the accident appears to have been the result of the plaintiff's inattention, at a time when it was her duty to watch her step. She testified as follows:

"Q. Did you notice when you stepped down on this stool, whereabouts it was setting with reference to the steps on the car? A. No, sir; I didn't notice it.

"Q. Could you see where it was located? A. Yes, sir.

"Q. Tell the jury how you came down off of those steps onto this stool. A. Well, I just came down just naturally down the steps. I supposed I was stepping in the center of the stool.

"Q. Did you look to see where the stool was with a view of stepping on it? A. I don't remember.

"Q. When you went down did you look to see if the box was there? A. I saw the box there sure.

"Q. Did you look to see if it was there? A. I didn't take particular notice. I supposed it would be there.

"Q. Is it not a fact that you saw others, some others get off and step down, and because there generally was a step-box to step on, you just supposed it was there, and stepped on down? A. Sure.

"Q. Didn't you just suppose, as you went down the steps, having seen others go down the steps and step down safely, and off, that they had stepped on a step-box, and that there was a step-box there? A. I suppose I did. I don't remember thinking anything about it.

"Q. You don't remember thinking anything about it? A. No, sir; about someone else stepping on it. I didn't have it on my mind when I went down the steps. I supposed it was there in proper place.

"Q. You don't know in what position it was, as to being the end of the box or the side of the box? A. No, sir; I didn't pay any attention."

The judgment of the district court is affirmed.